## Mullen v. Chester Traction Co., Appellant.

*Negligence—Street railways—Tickets—Independent lines.*

Where a street railway company prints and issues tickets in its own name, and having thereon the words "good for one five cent fare," and supplies such tickets to two other independent street railway companies under an understanding that the tickets when sold should be good as fare on any of the three railways, a person who purchases a ticket from a conductor of one of the independent lines, and is injured while riding as a passenger on such line in a collision between two of its cars, may maintain an action against the company issuing the tickets to recover damages for his injuries; and in such a case it is immaterial that the issuing company received no benefit from the sale of the ticket; and it is also immaterial, as far as the plaintiff is concerned, as to what agreement there was between the company issuing the ticket, and the company operating the line where the accident happened. The proceeds of the tickets sold each day were turned over at the end of the day to the issuing company, and therefore, the conductors of the independent lines were the agents of the issuing company in the sale of the tickets.

Argued Feb. 14, 1912.    Appeal No. 97, Jan. T., 1911, by defendant from judgment of C. P. Delaware Co., Dec. T., 1909, No. 112, on verdict for plaintiff in case of Owen J Mullen v. Chester Traction Company.    Before MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ.    Affirmed.

Trespass to recover damages for personal injuries. Before JOHNSON, P. J.

The facts are stated in the opinion of the Supreme Court.

At the trial the jury returned a verdict for $8,700, on

which judgment was entered for $6,000, all above that
sum having been remitted.

*Error assigned* amongst others was in refusing bind-
ing instructions for defendant.

*J. B. Hannum,* for appellant.—We contend that there
was no contract between the Chester Traction Company
and the plaintiff for safe transportation over any road
but its own, and this only because of the ticket.   It can
make no difference to the plaintiff what arrangements
existed between the Chester Traction Company and the
other companies as to the acceptance of the ticket as
fare.   He simply paid his fare with a ticket of the Ches-
ter Traction Company instead of with money, and the
Chester Traction Company would not be liable for the
negligence of either of the other companies, this being
an action on a special contract: Hood v. New York &
New Haven R. R. Co., 22 Conn. 1; Knight v. Portland,
etc., R. R. Co., 56 Me. 234; Hartan v. R. R. Co., 114
Mass. 44.

*Augustus T. Ashton,* with him *W. Roger Fronefield,*
for appellee.—The plaintiff was entitled to recover be-
cause the defendant entered into a contract with him,
whereby the defendant agreed that he should be safely
carried: Peters v. Rylands, 20 Pa. 497; Weed v. R. R.
Co., 19 Wendell (N. Y.) 534; Barkman v. R. R. Co., 89
Fed. Repr. 453.

There was nothing in the contract to apprise him that
the journey was to be made by another carrier:
Prethow v. W. J. & S. R. R. Co., 214 Pa. 112; Carter v.
Peck, 4 Sneed (Tenn.) 203.

OPINION BY MR. JUSTICE MESTREZAT, March 18, 1912:
The Southwestern Street Railway Company owns
and operates a street railway running in a southerly di-
rection from Philadelphia to Bow creek, `Delaware

county.  At this point the line connects with that of the Philadelphia and Chester Railway Company which operates a street railway from that point to Third street in the city of Chester.  The Chester Traction Company, the defendant in this case, operates a system of street railways in the city of Chester and other parts of Delaware county.  The lines of the three companies are physically connected so that a car can be run from the starting point of the Southwestern in Philadelphia to the car barn of the defendant company in the city of Chester.

All the stock of the three companies is owned or controlled by the Interstate Railways Company, a New Jersey corporation.  They have the same general officers but each company operates its own road.  They have separate bank accounts in which are kept the moneys belonging to each company.  Each company has separate pay rolls and pays its own employees.  The Philadelphia and Chester Railway Company with its own money pays the Southwestern Street Railway Company which owns the cars operated by the former company for the use of the cars.  It pays both the Southwestern Street Railway Company and the Chester Traction Company for the power furnished by them to it.  It also pays the Chester Traction Company for all repairs and maintenance of the cars which are used on its road, and pays the wages of the motormen and conductors operating the Southwestern Company's cars.

Passenger tickets for transportation over the three roads were issued by the Chester Traction Company in the following form:

"Chester Traction Company
Good for one five cent fare.
P. 207216        T. W. Grooket, Jr., Treasurer."

They were issued in packages of six tickets and sold for twenty-five cents.  Each of the conductors on the several lines obtained a supply of tickets on beginning his day's work, giving his receipt for them, and at the end of the day he turned over all money received from

the sale of the tickets and accounted for the unsold tickets. The money thus received by the Chester Traction Company was deposited in its account, and at the end of each month it paid to each of the other two companies the actual amount of money received for tickets used on their respective roads. The only profit which the Chester Traction Company derived from the tickets used on the other two roads consisted in the use of these moneys during the month, and in the fact that so far as the tickets sold were never used by the purchasers the proceeds were retained by the Chester Traction Company.

On September 22, 1908, the plaintiff purchased a package of six tickets for twenty-five cents from a conductor of the Philadelphia and Chester Railway Company. He used two of them on that day in going to his home in Philadelphia, one on the Philadelphia and Chester Railway and one on the Southwestern Street Railway. On the following day he boarded a car of the Southwestern Street Railway Company in Philadelphia to go to his work at Eddystone, Pennsylvania, which is on the Philadelphia and Chester Railway. By arrangement between that company and the Philadelphia and Chester Railway Company the car which he entered ran through to his destination at Eddystone. He gave the conductor of the Southwestern Street Railway Company two of the tickets. When the car in which he was riding got beyond the Southwestern road and while it was on the road of the Philadelphia and Chester Railway Company, it collided with a car of the latter company and the plaintiff was injured. He brought this action against the Chester Traction Company, which issued the ticket on which he was riding, to recover damages for the injuries he sustained by reason of "the carelessness and negligence on the part of the servants, agents, workmen or employes, who had been employed by the defendant in the execution of their contract for transportation with the plaintiff, and who were in charge of the car upon which the plaintiff was riding as a passenger at the time

of the aforesaid collision, resulting in the injuries above described." The trial resulted in a verdict and judgment for the plaintiff, and the defendant company has taken this appeal.

The appellant company contends that there was no contract between it and the plaintiff because: (a) the ticket was not sold to the plaintiff by the defendant, (b) the defendant did not operate the Philadelphia and Chester Railway on which the accident occurred or the Southwestern Street Railway and had no control over the operation of either, (c) that while the defendant issued the tickets purchased and used by the plaintiff, it received no benefit from their sale and use.

The position of the appellee is that the defendant entered into a contract with him whereby it agreed to carry him safely to his destination; that it was bound to execute this contract and the servants of the other two companies became, in the performance of the contract, the servants of the defendant; that the proceeds of lost and unused tickets and the use of the money received from the sale of tickets for the time it was retained by the defendant were a pecuniary benefit resulting from the sale of the tickets; that it is immaterial whether the defendant received any benefit from the sale of the tickets; and that there was nothing in the contract to notify him and he did not know that the three street car lines were separately operated or were not operated by the defendant company.

The learned court below instructed the jury "that if the Chester Traction Company (the defendant) did know when they delivered the tickets to this conductor that he would use them for passage over either the Southwestern or the Philadelphia and Chester Railway, that they are responsible for any negligent act concerning the carrying of this passenger just as though it had happened upon their own line." This is the subject of the second assignment, and raises the important and controlling question in the case. In finding for the plaintiff,

the jury found that the defendant company had such knowledge, and therefore the company sold the tickets to be used not only on its own line but on the line on which the plaintiff while a passenger was injured. The instruction complained of was not erroneous under the undisputed facts in the case. The ticket with which the plaintiff paid his fare was issued by the defendant company, purchased by the plaintiff, and, as disclosed on its face, was "good for one five cent fare." It was accepted by the conductor as a fare or compensation for carrying the plaintiff to his destination. Under the finding of the jury, the defendant issued the ticket to be used on the Philadelphia and Chester Railway, and thereby contracted with the plaintiff that it would carry him over that route. It is clear, we think, that the defendant's liability for the plaintiff's injuries is the same as though the ticket was being used and the plaintiff was being carried over a railway owned by the defendant company. The plaintiff contracted with the defendant to carry him over the railway on which he was traveling at the time he was injured and, regardless of the real ownership of the railway, it must be considered, as between the plaintiff and the defendant company, the railway of the defendant. By the issuance and sale of the tickets, the defendant held itself out to the public that it had the means of transportation and would, for the specified fare, carry passengers over this route. It is immaterial to the plaintiff as to what agreement the defendant had with the Philadelphia and Chester Railway Company to carry passengers. It is not alleged that the plaintiff knew of the existence of any such agreement, and hence its terms cannot relieve the defendant from the performance of its duty as a carrier under its contract with the plaintiff. In contracting for his transportation, the plaintiff knew the defendant and no other company, and relied solely on the defendant to carry him as required by its ticket. When he entered the car and the conductor accepted the ticket, the plaintiff became

the passenger of the defendant company, and it was responsible for his safe transportation over the railway to the destination to which passengers were carried for the stipulated fare. He is not concerned with the ultimate responsibility for the negligence resulting in his injuries, and need not look beyond the party obligating itself to perform the duties of a carrier in transporting him to his destination.

There is no merit in the contention that the ticket was not sold to the plaintiff by the defendant. The tickets purchased by the plaintiff were issued by the defendant company and in its name, were given to the conductors of the other two lines to sell, and at the close of each day they turned over the proceeds of the sales and the unsold tickets to the defendant company. The conductors were, therefore, the agents of the defendant for selling the tickets, and the sales must be regarded as being made by the defendant. There is no evidence that the conductors acted for themselves or their companies in selling the tickets; on the contrary, the undisputed facts show that they acted as the agents of the defendant in making the sales.

We regard it as immaterial whether the defendant company received any benefit from the sales of the tickets. If no benefit accrued to it from the sales, it is a matter with which the interested parties alone are concerned, and with which the purchasers of tickets have nothing to do. It could hardly be expected that the holder of a street railway ticket would, even at the risk of losing protection against the negligence of the carrier, investigate and determine whether the carrier selling the ticket and agreeing to transport him, retained all or any part of the consideration for the service to be performed. No such duty is imposed on the passenger. Having paid full consideration to the company accepting his money and agreeing to carry him, the holder of the ticket is not affected by the ultimate destination of the passage money. It may be suggested, however, that it

is not at all clear that the defendant company did not receive substantial benefits from the sales of the tickets. The conductors returned to the defendant each day the money received by them for the tickets, and it was retained by the defendant until the end of the month during which time the company had the use of it. In addition to this, the defendant retained the proceeds of the sales of lost and unused tickets.

The ticket sold to the plaintiff by the defendant was for a continuous passage over the line on which it was used. It was not a coupon ticket entitling the holder to ride over several separate and different railways, but each ticket was good for one fare over any one road on which the passenger desired to travel. The defendant company in selling the ticket was not acting as the agent of any other railway company but for itself, and the road on which it was used was, pro hac vice, the road of the defendant company for the transportation of the holder of the ticket. If, as the jury found, the plaintiff was injured by the negligence of the carrier transporting him on a ticket issued by the defendant company and without any fault on his part, he is entitled, under the facts of the case, to recover in this action.

The judgment is affirmed.